Terence M. FRACASSA

v.

M. Priscilla DORIS et al.

No. 2003–608–C.A.

Supreme Court of Rhode Island.

June 30, 2005.

Kelly M. Fracassa, Esq., for Plaintiff.

Jason D. Monzack, Esq., for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 13, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendants, M. Priscilla Doris (Mrs. Doris) and John F. Doris, Jr. (collectively Dorises or defendants), appeal from a Superior Court judgment granting specific performance of a purchase and sales agreement to the plaintiff, Terence M. Fracassa (Fracassa or plaintiff). After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

### Facts and Travel

This case was before this Court in 2003 on plaintiff's appeal from a judgment denying his claim for specific performance. See *Fracassa v. Doris*, 814 A.2d 357, 358–60 (R.I.2003) (*Fracassa I* ), for a detailed discussion of the events surrounding this ill-fated real estate conveyance. This dispute arose from the parties' failure to perform a contract for the sale of property located at 32 Withington Road, Narragansett (property). On September 21, 2000, the parties entered into a purchase and sales agreement whereby plaintiff agreed to purchase the property from defendants for $205,000 (first agreement or contract). This contract provided for a closing date of November 21, 2000, but the parties did not consummate the sale on that date. The plaintiff, an attorney, and defendants' counsel drafted two subsequent proposed contracts with closing dates of April 2, 2001 (second proposed agreement), and February 1, 2001 (third proposed agreement), with varying conditions. Neither document was signed by plaintiff or defendants.

On January 30, 2001, plaintiff filed a complaint in the Superior Court seeking specific performance of the contract. He alleged that the parties had agreed to an extension of the contract, ultimately choosing January 20, 2001, as the new closing date. The plaintiff further alleged that, at some point prior to January 20, 2001, he contacted Mrs. Doris, and she informed him that defendants had agreed to sell the property to another buyer. On January 19, 2001, the new buyer, Umberto Sorbo (Sorbo), recorded a purchase and sales agreement for the property in the Narragansett land evidence records.

A nonjury trial was held in the Superior Court. Although plaintiff claimed that his inability to secure a financing commitment within the timeframe set forth in the contract was not the reason the parties failed to close on the scheduled date, the record reveals that Fracassa had not received approval for a mortgage. The plaintiff received a mortgage commitment letter on January 9, 2001. The trial justice found

that on the November 21, 2000, closing date, plaintiff had not complied with the financing contingency in the first agreement. He also noted that plaintiff's $5,000 deposit was not returned and the parties continued to negotiate.[1] The trial justice found that plaintiff and Mrs. Doris orally agreed on January 20, 2001, as the new closing date, but when she received the third proposed agreement, with a February 1, 2001, closing date, Mrs. Doris became "irritated" and decided to sell the property to Sorbo. Nevertheless, the trial justice denied plaintiff's request for specific performance because the parties "never ultimately reached a complete agreement on all essential matters." The plaintiff appealed from the judgment of the Superior Court and filed a notice of *lis pendens* on the property.

This Court vacated the judgment and remanded the case to the Superior Court for findings of fact relative to events occurring after November 21, 2000, the original closing date:

"Specifically, the trial justice shall determine whether, based on the failure of the parties to perform on that date, the contract expired or whether the parties entered into an oral agreement to close on another date and if so, whether plaintiff was ready and able to close on that date." *Fracassa I*, 814 A.2d at 363.

On remand, the trial justice made the following findings of fact:

"1. That the contract * * * did not expire due to the parties' failure to perform on November 21, 2000;

"2. That the parties entered into an oral agreement to close on a later date, January 20, 2001; and

"3. That [p]laintiff was ready, willing, and able to close on January 20, 2001."

He ordered specific performance of the contract and utilized the third proposed agreement as a "sample," giving the parties sixty days from the date of the judgment in which to close the sale but allowing the parties to agree, in writing, to an alternate date.[2] The trial justice ruled that if the closing did not occur and plaintiff was responsible for its nonoccurrence, Fracassa would forfeit his deposit. The trial justice ordered defendants to remove all defects from the title to the property that could prevent a title insurance company from issuing a policy, except those defects related to Sorbo's claims. The defendants filed a timely notice of appeal.

Meanwhile, Sorbo, with notice of Fracassa's *lis pendens*, filed a complaint in Superior Court against defendants seeking specific performance of the purchase and sales agreement between Sorbo and defendants. Fracassa moved to intervene in that suit. Apparently without knowledge that Sorbo already had recorded a warranty deed to the property,[3] Fracassa filed an answer, asserting that the Dorises could not perform their contract with Sorbo because they were obligated to convey the property to him. He also set forth a counterclaim seeking a declaration that his interest in the property was superior to Sorbo's and an order vacating any filings made by Sorbo that cloud the title to the property.

1. The financing contingency in the first agreement reads as follows: "[n]otwithstanding any other provisions of this Agreement, this Agreement is subject to the issuance of a commitment letter by an institutional mortgage lender or mortgage broker * * * to the Buyer not later [than] ten (10) days prior to the Closing."

2. The judgment was stayed pending the outcome of this appeal.

3. The deed was executed on October 2, 2004, and Sorbo recorded it on October 22, 2004.

That suit is still pending; however, when Fracassa discovered that defendants had conveyed the property to Sorbo, he moved to dismiss this appeal as moot. This Court denied the motion.

### Analysis

On appeal, defendants argue that the trial justice did not adhere to the remand order of this Court. They contend that the trial justice tailored his findings to reach the conclusion that specific performance should be granted to plaintiff. In addition, defendants assert that the trial justice erred by enforcing the third proposed agreement.

 The decision to grant or deny a request for specific performance falls within the sound discretion of a trial justice and is reviewed by this Court under an abuse of discretion standard. *Citrone v. SNJ Associates,* 682 A.2d 92, 95 (R.I.1996) (citing *Eastern Motor Inns, Inc. v. Ricci,* 565 A.2d 1265, 1269 (R.I.1989), and *Hartman v. Carter,* 121 R.I. 1, 4, 393 A.2d 1102, 1105 (1978)). However, as we said in *Fracassa I,* "[w]hen a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available 'in the absence of a legitimate and articulable equitable defense.'" *Fracassa I,* 814 A.2d at 362 (quoting *Thompson v. McCann,* 762 A.2d 432, 436 (R.I.2000)).

 The defendants direct our attention to certain remarks made by the trial justice on remand, which, they suggest, demonstrate that he did not exercise his independent judgment in making the additional factual findings. The trial justice declared that he reviewed *Fracassa I* and came to certain conclusions by "[r]eading between the lines from the Supreme Court." He explained that:

"When this case was sent back to me by the Supreme Court[,] my first reaction[,] as I read it[,] was that they simply wanted me to make certain findings of fact. The more I read it and the more I read the memos from the parties[,] I suspected, and I may be wrong, but I suspect that what the Supreme Court was telling me was to reconsider my opinion, and with that in mind[,] that's what I'm going to do."

We note at the outset that the opinions of this Court speak forthrightly and not by suggestion or innuendo. For that reason, it is not the role of a trial justice to attempt to read "between the lines" of our decisions. The trial justice was not asked to reconsider his decision. He was directed to review the record and make additional findings of fact based on his independent judgment.

When the trial justice rendered his initial decision, he abused his discretion by denying plaintiff's request for specific performance without making specific factual findings demonstrating how plaintiff failed to meet his burden of proof. *Fracassa I,* 814 A.2d at 363. Consequently, we instructed the trial justice to make findings of fact on three discrete issues. *Id.* Notwithstanding his unfortunate remarks, our review of the record satisfies us that the trial justice made additional findings, although we deem them to be only minimally sufficient.

We reiterate that the trial justice was instructed to "determine whether * * * the contract expired or whether the parties entered into an oral agreement to close on another date, and if so, whether plaintiff was ready and able to close on that date." *Fracassa I,* 814 A.2d at 363. In determining that the contract survived the original closing date, the trial justice noted that after November 21, 2000, Mrs. Doris, by her own admission, "was still

thinking in terms of selling [the house] to [plaintiff], only subject to the closing date." He found that the language of the contract and the parties' negotiations to arrive at a new closing date of January 20, 2001, indicated that time was not of the essence. Additionally, the trial justice found that Fracassa was ready, willing, and able to perform the contract as of January 9, 2001—the date he received the financing commitment from his lender. We are satisfied that these findings are supported by the record and that the trial justice did not abuse his discretion in granting specific performance.

■■■ The trial justice reasoned that the parties continued to negotiate after the original closing date and that Fracassa had the right to waive any conditions that were intended for his benefit. "[A] party may waive a condition precedent if the condition is for the benefit of the waiving party." *Lajayi v. Fafiyebi*, 860 A.2d 680, 686 (R.I.2004). "[W]aiver is the voluntary intentional relinquishment of a known right," and generally, "the question of whether a party has voluntarily relinquished a known right is one of fact * * *." *Id.* at 687 (quoting *Haxton's of Riverside v. Windmill Realty, Inc.*, 488 A.2d 723, 725–26 (R.I.1985)). We are not convinced that, in light of the parties' continued negotiations after November 21, 2000, the trial justice abused his discretion by finding that plaintiff waived those conditions precedent contained in the first agreement that were for his benefit.

■■■ We also reject defendants' contention that the trial justice abused his discretion by ordering enforcement of the third proposed agreement. As defendants point out, the trial justice said: "I'm going to order specific performance by [plaintiff] *along the lines of* the third [proposed agreement]." (Emphasis added.) He went on to say that he was using the third proposed agreement as "a sample" because it did not contain the contingencies from the first agreement pertaining to financing, personal property, and insurance. This holding merely set forth the procedures and time constraints under which the parties were to perform the contract, unless they were modified, in writing, by agreement of the parties.

■■■ We decline to address the plaintiff's contention that the appeal is moot because the defendants no longer have title to the property. This Court was informed, in response to the plaintiff's motion to dismiss the appeal as moot, that the defendants conveyed the property to Sorbo, subject to the plaintiff's *lis pendens*.

### Conclusion

For the reasons set forth herein, the appeal is denied and dismissed, and the papers in the case are remanded to the Superior Court.